1
2
3
4
5                                   **UNITED STATES DISTRICT COURT**
6                                          **DISTRICT OF NEVADA**
7
8   MARY SMITH,                              )
                                             )
9              Plaintiff,                    )        2:05-CV-1338-RCJ-RJJ
                                             )
10  vs.                                      )
                                             )        **O R D E R**
11  CLARK COUNTY SCHOOL DISTRICT,            )
    *et al*.,                                )
12                                           )
               Defendants.                   )
13  _____ )

14         Before the Court for consideration is Defendants' Motion for Reconsideration (#44)

15  of the Court's prior Order partially denying summary judgement to Defendants (#43),

16  Plaintiff's Motion for an Injunction (#44), Plaintiff's Motion for a Jury Trial ($47), and

17  Defendants' Motions to Strike (#49, 50).  The Court has considered the motions, the

18  pleadings on file, and oral arguments on behalf of the parties.  Pursuant to the following

19  analysis, Defendants' Motion for Reconsideration is granted, but Defendants' underlying

20  Motion for Summary Judgment is still granted in part and denied in part, as specified in the

21  earlier Order.  Additionally, Plaintiff's Motion for an Injunction, Plaintiff's Motion for a Jury

22  Trial, and, and Defendants' Motions to Strike are denied.

23
24
25

**BACKGROUND**

Mary Smith, pro se Plaintiff, is an African-American teacher employed by the Clark County School District ("CCSD"). Since 1998, Plaintiff has been a teacher at Southern Nevada Vocational Technical Center ("Vo-Tech"). Plaintiff is a licensed teacher and she has taught Introduction to Health Occupations and Tools for Success. Plaintiff alleges racial discrimination against Defendants Clark County School District, Principal Richard Arguello and Assistant Principal Margaret Harmon based on two sets of events.

First, she alleges that from March 21, 20002 through January 28, 2003, Defendants discriminated against her through low evaluations, closer supervision, and forced attendance in training classes. Plaintiff filed a discrimination charge containing these allegations with the Nevada Equal Rights Commission ("NERC") and Equal Employment Opportunity Commission ("EEOC") on January 28, 2003. Second, Plaintiff alleges discrimination based on how Defendants handled her teaching schedule from 2004 to 2006. During the 2003-2004 school year, Plaintiff taught six Health Occupations classes; in 2004-2005, she taught four Tools for Success classes and two Health Occupations classes; and in 2005-2006, she taught six Tools for Success classes. Plaintiff contends that Defendants discriminated against her through reassigning her to only teach Tools classes. Based on these events, Plaintiff filed a second charge of discrimination with the NERC on April 6, 2005, and the EEOC on April 20, 2005. In her 2005 EEOC charge, Plaintiff claimed that her change in teaching assignment was the result of racial discrimination by Defendant Arguello, and noted that the school hired a white female to teach the Health Occupations classes in her place.

On November 7, 2005, Plaintiff filed a Complaint against Defendants, alleging violation of 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act. On November 21, 2006, this Court entered an Order (#43) granting summary judgment to Defendant CCDC (the only Defendant served) as to Plaintiff's Section 1983 and Section 1981 causes of action. The Court also found that her Title VII action based on the earlier set of events was barred by the statute of limitations and found no basis for her Title VII claim based on retaliation. However, the Court denied summary judgment as to Plaintiff's Title VII cause of action that arose out of her reassignment to only teaching the Tools classes, finding that questions of material fact remained as to whether the reassignment constituted an adverse employment action.

Defendant CCSD now brings a Motion for Reconsideration of the Court's Order denying in part summary judgment. Defendant contends that in its Order, the Court applied the wrong legal standard governing adverse employment actions in Title VII cases. Defendant seeks dismissal of all Plaintiff's remaining claims under the proper legal standard. Also before the Court are Plaintiff's Motion for an Injunction (#46), Plaintiff's Motion for a Jury (#47), Defendants' Motion to Strike Plaintiff's Motion for a Jury (#49), and Defendants' Motion to Strike Plaintiff's Motion for an Injunction (#50).

## DISCUSSION

I.  **Motion for Reconsideration**

   A.  **Standards of Review**

      1.  **Motion for Reconsideration Standard**

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *In re AgriBioTech, Inc.*, 319 B.R. 207, 209 (D. Nev. 2004).

### 2. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the party opposing the motion may not rest on the mere allegations or denials of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of a claim or defense at trial, the moving party can meet its initial burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Conversely, when the moving party bears the burden of proof at trial, then it must establish each element of its case at summary judgment.

**B.     Legal Analysis**

Pursuant to the Court's prior Order (#43), Plaintiff's only remaining cause of action is her Title VII claim based on the reassignment of her teaching schedule. All other claims were dismissed in the Order. Defendants contend that the Court erroneously failed to dismiss the remaining claim by relying on improper law and facts. Although the wrong legal standard was applied in the earlier Order, application of the correct standard would not have changed the Court's decision at summary judgment.

Under Title VII, "it is unlawful . . . for an employer . . . to discriminate against any individual" because of the "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII claims are analyzed in three steps: (1) the plaintiff must establish a prima facie case of racial discrimination; (2) if the plaintiff has met its burden, the employer must articulate a legitimate, nondiscriminatory reason for its actions; and (3) the burden then shifts back to plaintiff to show that the employer's alleged nondiscriminatory reason is pretextual. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). A plaintiff establishes a prima facie case of discrimination by proving: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the employer treated the plaintiff "differently than a similarly

situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

As to her remaining Title VII claim, Plaintiff alleges that Defendants discriminated against her based on her race by reassigning her from teaching the Health Occupations classes to the Tools for Success classes. Plaintiff argues that the Tools classes carry significantly more students, requiring more work; are seen as a less desirable teaching opportunity; and do not allow her to utilize her teaching credentials in the health field. She also alleges that a Caucasian female was chosen to replace her in teaching the Health Occupations classes, when Plaintiff was qualified. Based on the factual record surrounding these allegations, Plaintiff has fulfilled the first, second and fourth elements of her prima facie case. She alleges employment discrimination based on her race, seems to have been qualified to teach the Health classes, and was replaced by a Caucasian teacher. The parties dispute whether Plaintiff has fulfilled the third factors – whether she suffered an adverse employment action.

In its prior Order (#43), the Court held that there was a question of material fact as to whether Plaintiff suffered an adverse employment action and denied summary judgment as to Plaintiff's Title VII claim grounded in the reassignment of her teaching load. Defendants contend that the Court applied the wrong legal standard governing adverse employment actions and relied on improper facts. Therefore, they ask the Court to reconsider its prior ruling, applying the proper legal standard and facts.

**1.   Adverse Employment Action Standard**

In the prior Order (#43), the Court drew upon a Ninth Circuit decision in stating that discriminatory actions by employers are adverse employment actions under Title VII if they

are "reasonably likely to deter to employees from engaging in protected activity." (#43 at 9 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)).) The Court also stated that actions such as "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion" are examples of adverse employment actions. (#43 at 9 (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)).) In the Motion for Reconsideration, Defendants argue that in relying on *Ray* and *Brooks*, the Court applied the wrong legal standard governing adverse employment actions, as these decisions cite the standard for anti-retaliation Title VII claims, not anti-discrimination claims -- as in Plaintiff's case. However, the following analysis will show that while the Court did erroneously apply the broader anti-retaliation standard in its Order, the error was harmless, as there would still be a question of fact as to whether Defendants committed an adverse employment action under the proper anti-discrimination standard.

In their Motion for Reconsideration, Defendants rely on a recent Supreme Court opinion that was not cited in the earlier briefing. In *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), the Court recently determined the proper standard for determining whether there has been an adverse employment action in Title VII cases. The Court first observed that Title VII protects employees from discrimination in two distinct contexts: (1) substantive discrimination in employment decisions (the "anti-discrimination" provision); and (2) retaliatory discrimination against employees who bring Title VII complaints (the "anti-retaliation" provision). *Id.* at 2411. The anti-discrimination portion of Title VII states that it is unlawful for employers to "discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment" because of the individual's "race, color, religion, sex, or national origin." Section 703(a) of 42 U.S.C. § 2000e-2(a). The anti-retaliation provision, on the other hand, states that it is unlawful for an employer "to discriminate against any of his employees or applicants for employment" because the employee filed a charge of discrimination under Title VII. Section 704 of 42 U.S.C. § 2000e-2(a).

In construing the two Title VII provisions, the *Burlington Northern* Court noted that the language of the substantive anti-discrimination provision is narrower than the anti-retaliation provision, with limiting words such as "hire," "discharge," "compensation, terms conditions, or privileges of employment," "employment opportunities," and "status as an employee." *Burlington Northern*, 126 S. Ct. at 2411-12 (quoting 42 U.S.C. § 2000e-2(a)). The anti-retaliation provision only states that discrimination of complaining employees is barred, without tying the discrimination to employment-related actions. Based on this narrower language and the different purposes of the two provisions, the Court held that the scope of anti-retaliatory provision was much broader than the anti-discrimination provision, extending "beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern*, 126 S. Ct. at 2414. The Court held that the anti-discrimination provision, which is at issue in the present dispute, protects more narrowly against "actions that affect employment …[,] alter the conditions of the workplace," or "affect the terms and conditions of employment." *Id.* at 2412-13. Therefore, the anti-retaliation provision forbids any discrimination based on filing a complaint, whether employment-related or not, and the anti-discrimination provision outlaws only employment-related discrimination.

### 2.      Application of the Standard to Plaintiff's Allegations

In citing *Ray* and *Brooks*, the Court erroneously applied the anti-retaliation adverse employment standard to Plaintiff's anti-discrimination claims.[1]  The Court should have followed the Supreme Court's guidance in *Burlington Northern* and applied the narrower anti-discrimination standard.  However, the error is ultimately inconsequential as there would still be a question of fact as to whether Defendants committed an adverse employment action under the proper legal standard.

Under the anti-discrimination standard, Defendants committed an adverse employment action against Plaintiff if their actions affected Plaintiff's employment, altered the conditions of her workplace, or affected the terms and conditions of her employment.  *See id.* at 2412-13.  At the October 31, 2006 hearing, the Court clearly stated its belief that Plaintiff has sufficiently raised a question of fact as to whether Defendants actions constituted an adverse employment action.  The Court noted that although Plaintiff was not fired or denied salary raises, the reassignment from Health Occupations to Tools for Success classes potentially injured Plaintiff's reputation at the school and increased her workload burden.  The Tools classes are freshman classes and significantly larger than the senior Health classes.  Plaintiff alleges that the school was racially motivated in demoting her to only teach freshman level classes when she had credentials and experience teaching the Health class.  The Court further noted that there is a question of fact as to whether the school was involved in seeking to credential Plaintiff for Tools so she could be assigned away from the Health classes.  If

---

[1] Plaintiff alleged violation of Title VII for both employment discrimination and retaliatory discrimination. However, Plaintiff's retaliation claim was found lacking in evidentiary support and dismissed.  The disputed claim here is Plaintiff's non-retaliatory allegations of discrimination based on Defendants reassigning her to teach only Tools classes.

Plaintiff's allegations are true, then Defendants actions would constitute an adverse employment action under the *Burlington Northern* anti-discrimination standard. Defendants would have affected the nature of Plaintiff's employment and altered the conditions of her employment. If these actions were racially motivated, then Plaintiff was subject to employment discrimination in violation of the anti-discrimination provision of Title VII.

Therefore, the Court's prior error in applying the anti-retaliation standard is harmless and does not affect the merits of the summary judgment Order. There are no grounds for reversing the Court's prior order and it is upheld.

## II.     Motion for Preliminary Injunction

On January 1, 2007, Plaintiff brought a Motion for Injunction (#46) against CCSD. In the Motion, Plaintiff states that she was "constructively discharged" by Principal Arguello because he made her situation "painful, humiliating, degrading, and intolerable" by assigning her teach another semester of six tools classes. (#46 at 1.) She states that after receiving her assignment for the 2006-2007 school year, she decided not to return to teach at Vo-Tech. Plaintiff maintains that the assignment to teach six Tools classes injured her reputation with other teachers and would have resulted in a heavy workload. She asks the Court to issue an injunction and "intervene in the decision of whether I am given my job back." (*Id.* at 2.) It is unclear whether this means she wants the Court to order the school to not fire her, or to assign her to teach Health Occupations classes instead of Tools classes. It is also unclear whether she seeks temporary or permanent injunctive relief.

Plaintiff's Motion for an Injunction should be denied. In a prior Order (#36), this Court denied a previous "Motion for an Injunction" (#5) filed by Plaintiff in this case. On

January 3, 2006, Plaintiff requested that the Court enjoin the school from firing her for not teaching Tools classes. In its prior Order, the Court noted that Plaintiff failed to comply with Local Rule 7-2's requirement that motions must be supported by a memorandum of points and authorities. (#5.) The Court also found that Plaintiff's prior Motion did not specify whether she sought temporary or permanent injunctive relief, and only made unsupported allegations. *(Id.)* Plaintiff's present Motion for injunctive relief does not cure these defects. Her present Motion does not attach a memorandum or points and authorities, specify what type of injunctive relief she seeks, and offer more than mere conclusory allegations. While the Court has an obligation to construe pro se pleadings liberally, pro se litigants must follow the same rules of procedure that govern other litigants. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986). Therefore, her Motion is denied.

### III.     Motion for Jury Trial and Motion to Strike

Plaintiff also brings a "Motion [for] the Court to Set a Trial Date for a Jury to Hear Evidence." (#47.) As with her Motion for an Injunction (#46), her Motion for a jury trial lacks a memorandum of points and authorities as required by Local Rule 7-2. Furthermore, Federal Rule of Civil Procedure 38(b) requires a party demanding a jury trial to serve the demand on the other parties in writing within 10 days "after the last service of the last pleading" directed to the triable issue. In this case, the last pleading was filed almost one year ago and Plaintiff only now brings her demand for a jury trial. Therefore, even if the Court construes Plaintiff's Motion as a valid legal motion, despite its failure to comply with the local rules, Plaintiff has effectively waived her right to a trial by jury. Fed. R. Civ. P. 38(d). Therefore, Plaintiff's request for a jury is denied.

## CONCLUSION

IT IS HERE BY ORDERED that Defendants' Motion for Reconsideration (#44) is *granted*, but Defendants' underlying Motion for Summary Judgment (#29) remains *granted in part* and *denied in part*, as specified in the Court's November 22, 2006 Order (#43). The Court's application of the wrong legal standard governing adverse employment actions does not affect the outcome stated in the prior Order. IT IS FURTHER ORDERED that Plaintiff's Motion for an Injunction (#46) and Motion for a jury trial (#47) are *denied*. Finally, IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Motion for an Injunction (#50) and Motion to Strike Plaintiff's request for a jury trial (#49) are *denied*.

DATED: April 16, 2007.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE